UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DAVID LOUIME,                                        :
                         Plaintiff,                  :
                                                     :
v.                                                   :
                                                     :
JAMIE LAMANNA, Superintendent of Green               :        **OPINION AND ORDER**
Haven Correctional Facility; ROBERT                  :
PRESSLEY, Correction Officer; PATRICK                :        21 CV 9594 (VB)
SQUIRE, Correction Officer; DJOK BERISHA,            :
Correction Officer; MICHAEL MERCED,                  :
Correction Officer; and ERIC GUTWEIN,                :
Hearing Officer,                                     :
                         Defendants.                 :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff David Louime, proceeding pro se and in forma pauperis, brings this Section

1983 action against defendants Superintendent Jamie Lamanna, Correction Officer ("C.O.")

Robert Pressley, C.O. Patrick Squire, C.O. Djok Berisha, C.O. Michael Merced, and Hearing

Officer Eric Gutwein.  Plaintiff alleges his constitutional rights were violated when defendants

verbally and physically attacked him on the way to the mess hall, and thereafter detained him in

unsanitary conditions and without proper medical assistance, and when he was subjected to

allegedly deficient disciplinary proceedings, all while incarcerated at Green Haven Correctional

Facility ("Green Haven").

      Now pending is defendants' partial motion to dismiss the amended complaint pursuant to

Rules 12(b)(1) and 12(b)(6), which seeks to dismiss all of plaintiff's claims except for his Eighth

Amendment excessive force claims against C.O.s Berisha, Merced, Pressley, and Squire in their

individual capacities.  (Doc. #31).

      For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART.

1

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and plaintiff's opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

During the complained-of events, plaintiff was incarcerated at Green Haven.

Plaintiff alleges on December 4, 2018, he was walking to the mess hall, when C.O. Squire ordered him to quicken his pace and began "screaming racial epithets" at him.  (Doc. #27 ("Am. Compl.") ¶ 6).  Squire then allegedly requested plaintiff's identification, and when plaintiff held out his hand to present it, Squire "struck" plaintiff forcefully, "with a closed fist to the left side of the Plaintiff's jaw and neck."  (Id. ¶ 9).  According to plaintiff, Squire continued hitting plaintiff's face and head, and plaintiff fell to the ground.

Next, C.O.s Berisha and Pressley allegedly joined in, kicking plaintiff in the face, head, and ribs while he laid on the ground.  An emergency team then responded to the altercation (the "Incident"), and anonymous "different officers" continued the attack.  (Am. Compl. ¶ 13). Plaintiff alleges he lost consciousness from the attack, and when he awoke, he remembered C.O. Merced had pepper sprayed him "vigorously in his mouth, nose, ears and eyes."  (Id. ¶ 14). Plaintiff allegedly remained on the ground bleeding before eventually being moved to Green Haven's Special Housing Unit ("SHU").  Plaintiff alleges he suffered several bruises and lacerations to the head and face and his "skin felt as if it were on fire" from the pepper spray.

---

[1]     In addition to the amended complaint, courts may consider a pro se plaintiff's other submissions, such as any opposition to a motion to dismiss, when "evaluating the legal sufficiency of a pro se plaintiff's claims."  See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).

(Id. ¶ 16).  Thereafter, plaintiff was permitted to rinse out the pepper spray, but was "barely able to see."  (Id. ¶ 18).

Later, an unknown officer allegedly showed plaintiff a metal shank, which he accused plaintiff of possessing.  Plaintiff responded that he did not know what the officer was talking about, and had never seen the weapon.  Plaintiff claims he was then put into a "dirty cell that reeked of feces and urine, lacking a mattress" for a day, after which he was given a "torn-up mattress, with human excrement and bodily fluids on the sheets."  (Am. Compl. ¶ 20).  Plaintiff further alleges he notified an unknown officer he needed medical attention, but the officer told him to be quiet.

On December 16, 2018, plaintiff was issued two misbehavior reports, which allegedly contained "a slew of false accusations and charges" against him.  (Am. Compl. ¶ 21).  Plaintiff alleges C.O.s Berisha, Merced, Pressley, and Squire "sought to cover-up the attack by writing a false misbehavior report" (id. ¶ 36), and "conspired with" Hearing Officer Gutwein "to find the Plaintiff guilty of all charges without due process."  (Id. ¶ 43).  After receiving the reports, plaintiff claims he requested to speak with an employee assistant, but did not receive such assistance.  A few days later, plaintiff stopped an unidentified nurse and disclosed he "was in extreme urgent need of medical attention" which had been previously denied by officers.  (Id. ¶ 23).  The nurse examined plaintiff and submitted a request for physical therapy once a week.

Two days later, plaintiff was called to a disciplinary hearing for the misbehavior reports, presided over by Hearing Officer Gutwein.  Plaintiff told Gutwein that he had not met with his employee assistant or obtained relevant documents and witness testimony to aid in his defense.  The hearing was then postponed twice, for "almost thirty days," so plaintiff could obtain assistance.  (Am. Compl. ¶ 32).  Several of plaintiff's requested witnesses refused to testify,

allegedly in fear of potential retaliation.  Plaintiff says he requested copies of their witness refusal reports, which he never received.  When the hearing commenced, Gutwein allegedly yelled at plaintiff, threatened him, and told him "the hearing would be postponed until he pleaded guilty."  (Id. ¶ 31).  Gutwein also allegedly told SHU officers to deny plaintiff access to Green Haven's law library.  Plaintiff was found guilty on all charges, and received a punishment of 120 days loss of all privileges to be spent in the SHU.  (Id. ¶ 33).  Plaintiff appealed this decision to state court, and the charges were eventually administratively reversed.[2]

At some point while in the SHU, plaintiff filed grievances about his alleged assault and the excessive force used, inadequate medical care, and loss of property.

## DISCUSSION

I.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011)).[3]  "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374

---

[2]    Though plaintiff alleges the state court "reversed" his charges (Am. Compl. ¶ 34), the Appellate Division's decision clarifies:  "The Attorney General has advised this Court that the determination has been administratively reversed, all references thereto have been expunged from petitioner's institutional record and the $5 mandatory surcharge has been refunded to petitioner inmate's account."  Louime v. Venettozzi, 186 A.D.3d 1870, 1871 (3d Dep't 2020).

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

(1978)).  The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.     Subject Matter Jurisdiction

First, defendants argue plaintiff's claims against them in their official capacities are

barred by the Eleventh Amendment, and thus, the Court lacks subject matter jurisdiction over

these claims.

The Court agrees.

State officers sued in their official capacities are immune from suit under the Eleventh

Amendment absent a state's consent or a congressional abrogation of state sovereign immunity.

Clark v. Schroeder, 847 F. App'x 92, 93–94 (2d Cir. 2021) (summary order), cert. denied, 142 S.

Ct. 341.  "New York has not waived its immunity, nor has Congress abrogated it."  Li v.

Lorenzo, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order).  Further, the Eleventh

Amendment bars claims for monetary damages against defendants acting in their official

capacities.  See Gan v. City of N.Y., 996 F.2d 522, 529 (2d Cir. 1993).

Here, all defendants are DOCCS employees and, thus, state officials.  Claims against

them in their official capacities are therefore barred by the Eleventh Amendment and dismissed.

See, e.g., Robinson v. Tillotson, 2018 WL 4682226, at *8 (S.D.N.Y. Sept. 27, 2018).[4]

III.    Failure to State a Claim

A.      Superintendent Lamanna's Lack of Personal Involvement

Superintendent Lamanna contends plaintiff has not alleged facts sufficient to show he

was personally involved in any of the alleged constitutional violations.

---

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See
Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

The Court agrees.

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); Tangreti v. Bachmann, 983 F.3d 609, 619–20 (2d Cir. 2020).  Moreover, when "the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  Perkins v. City of N.Y., 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).

Here, plaintiff does not allege that Lamanna, Green Haven's Superintendent, was personally involved in any of the purportedly unconstitutional conduct plaintiff complains of. Plaintiff alleges Lamanna "upon notice of the assau[lt] on the Plaintiff back by several officers under [his] control, upon receiving several grievances from the Plaintiff, allowed and did not stop and/or failed to stop the cruel and unusual punishments of the Plaintiff by several officers under" his control.  (Am. Compl. ¶ 59).  Further, plaintiff alleges Lamanna had "responsibility" for overseeing the officers who purportedly violated his rights, he did not properly supervise them, and "failed to stop the abuse of the Plaintiff when [he was] advised of the conduct of those officers, through the facility's Inmate Grievance Program."  (Id. ¶ 44).

However, the "Supreme Court clarified that a supervisor's mere knowledge and acquiescence cannot establish personal involvement under § 1983." Faulk v. N.Y.C. Dep't of Corr., 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (quoting Ashcroft v. Iqbal, 556 U.S. at 677). Thus, defendants are only liable under Section 1983 if they "took an action that deprived the plaintiff of his or her constitutional rights" and they are not liable if their "failure to act deprived plaintiff" of such rights. Id. Further, "mere complaints made to supervisory defendants are not enough to establish supervisory liability under § 1983." Id. Lamanna's alleged awareness of purported constitutional violations after the fact is insufficient; thus, plaintiff fails to allege Lamanna was personally involved in any of the purported violations.

Accordingly, plaintiff's claims against Superintendent Lamanna must be dismissed.

B.      Eighth Amendment Claims

Plaintiff asserts two types of Eighth Amendment claims:  (1) deliberate indifference to serious medical needs, and (2) unconstitutional conditions of confinement.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Courts have construed the Eighth Amendment to protect inmates' rights to (1) adequate medical care, Estelle v. Gamble, 429 U.S. 97, 104–06 (1976), and (2) "conditions of confinement" that are "at least humane," Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). To state a claim for a violation of either of these Eighth Amendment rights, a prisoner must plausibly allege an objective component—that the deprivation of rights was objectively serious—and a subjective component—that the prison official acted with requisite mens rea. See, e.g., Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006) (deliberate indifference to serious medical needs); Gaston v. Coughlin, 249 F.3d at 164 (conditions of confinement).

8

Moreover, to adequately state any Section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d at 616 (quoting Ashcroft v. Iqbal, 556 U.S. at 676).

          1.     Deliberate Indifference to Serious Medical Needs

C.O.s Berisha, Merced, Pressley, and Squire argue plaintiff's claim for deliberate indifference to serious medical needs under the Eighth Amendment must be dismissed because his condition was not sufficiently serious.

The Court agrees.

To plead the objective component of a medical needs claim, a plaintiff must plausibly allege a "sufficiently serious" inadequacy in his medical care. Salahuddin v. Goord, 467 F.3d at 279–80. That is, a plaintiff must adequately plead he "was actually deprived of adequate medical care" and that such deprivation was "sufficiently serious," which turns on "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. at 280. "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id.

To plead the subjective component of a medical needs claim, a plaintiff must allege an official acted with "deliberate indifference," which is the equivalent of "subjective recklessness." Salahuddin v. Goord, 467 F.3d at 280. "To satisfy this prong of the deliberate indifference test, a

plaintiff must allege only that the defendant was aware of facts from which one could infer that a substantial risk of serious harm existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order).

Because plaintiff alleges defendants "denied the Plaintiff any form of medical care" and provided "no medical assistance, treatment or care" after the Incident, the Court must determine whether his condition was sufficiently serious.  (Am. Compl. ¶ 47).

Here, plaintiff alleges he suffered bruises and lacerations to the head and face, skin irritation, eye discomfort, and vision difficulties from the Incident.  He further alleges, after the Incident, he was "shoved into a cold shower, wherein he screamed from the pain of the beating and discomfort of washing the pepper spray out of his eyes."  (Am. Compl. ¶ 17).  Eventually, plaintiff alleges he notified an unnamed officer that he needed medical attention, and the officer told him to be quiet.  A few days later, plaintiff allegedly stopped an unidentified duty nurse and told him he "was in extreme urgent need of medical attention and when he requested such, he was denied by the officers for quite some days."  (Id. ¶ 23).  Plaintiff further alleges the unidentified nurse examined him and "submitted a request for physical therapy sessions once a week."  (Id. ¶ 24).

Plaintiff has not plausibly pleaded the objective prong.  Generally, plaintiff's allegations of his injuries, assumed true for purposes of the instant motion—bruising, lacerations to the head and face, pain, and blurry vision—are "minor, temporary injuries" which "have been held not to constitute serious medical needs as a matter of law."  Garcia v. Furnia, 2014 WL 4685104, at *4 (N.D.N.Y. Sept. 19, 2014) (denying summary judgment where plaintiff suffered soreness, black eye, scrapes, headache, and blurred vision); see Boykins v. Lopez, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022) ("[D]istrict courts in the Second Circuit have consistently held that

bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to

support a deliberate indifference claim").  And, plaintiff does not allege "what treatment he

needed and did not receive, whether he suffered chronic pain or any other medical condition as a

result of the failure, for how long any such pain or condition persisted, or whether he has any

permanent injuries following the assault."  Alexander v. Cuomo, 2018 WL 2041576, at *9

(N.D.N.Y. Feb. 26, 2018) (allegations plaintiff was "bruised, swollen, woozy, bloody, and

obviously injured" not sufficiently serious).  Indeed, plaintiff alleges that once he summoned

medical care from a duty nurse, the only treatment ordered was physical therapy once a week,

supporting a reasonable inference that his injuries did not represent a continuing harm to his

health even several days later.  Cf. Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he

failure to provide treatment for an otherwise insignificant wound may violate the Eighth

Amendment if the wound develops signs of infection" but not "where the alleged lapses in

treatment are minor and inconsequential").

Accordingly, plaintiff's medical indifference claim must be dismissed.

### 2.   Conditions of Confinement

C.O.s Berisha, Merced, Pressley, and Squire argue plaintiff's conditions of confinement

claim fails because, even assuming arguendo the conditions were sufficiently serious, plaintiff

has not alleged these defendants were responsible for the alleged conditions, nor that they had

culpable intent.

The Court agrees.

To establish the objective component of a conditions of confinement claim, a plaintiff

"must show that the conditions, either alone or in combination, pose an unreasonable risk of

serious damage to his health."  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).  "Thus,

prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." Id.

To establish the subjective component, a plaintiff must allege a "defendant acted with more than mere negligence." Walker v. Schult, 717 F.3d at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or safety." Id. A plaintiff may plausibly allege this component when he alleges "a risk was obvious or otherwise must have been known to a defendant." Id.

Plaintiff does not plausibly allege a conditions of confinement claim. Even assuming, arguendo, that plaintiff's allegations are sufficient to plead the objective component, here, there are no allegations that defendants knew of these conditions or that the conditions were obvious and defendants nevertheless disregarded them. That is, plaintiff alleges he was placed in the dirty cell "[s]hortly . . . after" the Incident, but not by whom, and that he requested medical attention from an unnamed correction officer, not any defendant. (Am. Compl. ¶ 20). Nowhere does plaintiff allege C.O.s Berisha, Merced, Pressley, or Squire placed him in or was aware that he had been placed in this cell, or knew the conditions thereof.

Accordingly, plaintiff's conditions of confinement claim must be dismissed.

C.     Fourteenth Amendment Claims

1.     Procedural Due Process

Defendants argue plaintiff fails to allege facts demonstrating his disciplinary hearing before Hearing Officer Gutwein displayed insufficient process that violated his procedural due process rights.

The Court agrees.

12

Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010). Thus, to establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

As to the second element, when an inmate's liberty interest is implicated, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply." Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, (1974)). The procedural due process afforded a prisoner charged with a violation in a disciplinary proceeding consists of: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004); see also Wolff v. McDonnell, 418 U.S. at 566 (An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."). However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses." Wolff v. McDonnell, 418 U.S. at 566.

Further, it is well established that inmates confined in the SHU have a due process right to "substantive assistance" in disciplinary hearings. Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir.

13

1988).  The assistance provided "certainly should include gathering evidence, obtaining

documents . . . and interviewing witnesses.  At a minimum, an assistant should perform the

investigatory tasks which the inmate, were he able, could perform for himself."  Id.  "When the

inmate is disabled . . . by being confined full-time to SHU . . . , the duty of assistance is greater

because the inmate's ability to help himself is reduced."  Id. at 897.

Even assuming plaintiff's sentence of 120 days in the SHU with loss of certain privileges

deprived him of a liberty interest, plaintiff has not alleged his disciplinary proceedings before

Hearing Officer Gutwein were constitutionally deficient.

Plaintiff alleges he received written notice of the charges against him two days before his

scheduled disciplinary hearing and, when he told Gutwein that he had not met with his employee

assistant or obtained necessary documents and witness testimony, his hearing was postponed

twice until he met with his employee assistant.  This complies with procedural due process

requirements.  See generally Wolff v. McDonnell, 418 U.S. 539.  Moreover, plaintiff's general

allegations that the extensions of his disciplinary proceedings violated "N.Y.C.R.R. Chapter V"

fail because violations of DOCCS regulations alone do not implicate the Constitution.  See

Holland v. City of N.Y., 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016).

Plaintiff alleges he was denied procedural due process because he requested to present

certain witnesses who declined to testify, and plaintiff did not receive their witness refusal forms.

However, due process does not require a plaintiff to be provided copies of witness refusal forms

or that a hearing officer inquire into witnesses' reasons for refusing to testify.  See Martinez v.

Minogue, 2008 WL 4241746, at *6 (N.D.N.Y. Sept. 11, 2008) (hearing officer's failure to

properly inquire into witnesses' refusal to testify and "to provide both an adequate reason and a

signed witness refusal form to the plaintiff," in violation of state regulation, did "not rise to a level of constitutional significance").

Finally, plaintiff's allegations that Gutwein "started screaming at him" and said the hearing would be postponed until plaintiff pleaded guilty" (Am. Compl. ¶¶ 30–31), do not state a claim because "verbal harassment, without more, is not actionable under § 1983" in the prison setting.  See Williams v. Dubray, 557 F. App'x 84, 86 (2d Cir. 2014).  Moreover, here, plaintiff alleges he was "found guilty of all charges" (Am. Compl. ¶ 33); thus, he was not forced to plead guilty.  Further, plaintiff alleges he was afforded reasonable assistance and an opportunity to present his case to Gutwein.  Accordingly, plaintiff has not alleged he suffered injury as a result of Gutwein's alleged verbal harassment.  See Johnson v. Eggersdorf, 8 F. App'x 140, 143 (2d Cir. 2001) (summary order) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged").

Thus, plaintiff's procedural due process claim must be dismissed.

2.    Substantive Due Process

C.O.s Berisha, Merced, Pressley, and Squire argue plaintiff's substantive due process claim under the Fourteenth Amendment, which arises from the Incident, fails because plaintiff was allegedly assaulted when incarcerated pursuant to a sentence of conviction.

The Court agrees.

In light of plaintiff's status as an inmate incarcerated pursuant to a sentence of conviction, his assault allegations fall under the Eighth Amendment.  See Graham v. Connor, 490 U.S. 386, 394 n. 10 (1989) ("After conviction, the Eighth Amendment serves as the primary source of substantive protection" for excessive force claims).  Thus, because plaintiff's claim is covered by the Eighth Amendment, it "must be analyzed under the standard appropriate to that

15

specific provision, not under the rubric of substantive due process." U.S. v. Lanier, 520 U.S. 259, 272 n.7 (1997).

Accordingly, plaintiff's substantive due process claim must be dismissed.

        3.     Equal Protection

C.O.s Berisha, Merced, Pressley, and Squire argue plaintiff fails plausibly to state an equal protection claim against them.

The Court disagrees with respect to Squire, but agrees with respect to Berisha, Merced, and Pressley.

The Constitution's "equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). To state a claim under the Equal Protection Clause, a plaintiff must plausibly allege "compared with others similarly situated, [he] was selectively treated; and . . . that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980). If a prisoner claims he was treated differently by prison officials because of a protected characteristic, he must "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and that such treatment "was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

Here, plaintiff alleges Squire directed him to walk faster, "scream[ed] racial epithets" (Am. Compl. ¶ 6), and "utter[ed] obscene slurs" (id. ¶ 7), before allegedly assaulting plaintiff because he "extended his hand" to show Squire his identification. (Id. ¶ 9). Defendants quote Baskerville v. Goord, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000), for the proposition that

"[m]ere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983."  (Doc. #32 ("Defs. Opp.") at 13).  However, they exclude the following elucidatory sentence:  "Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." Baskerville v. Goord, 2000 WL 897153, at *3.  Here, plaintiff alleges Squire's epithets and assault went hand-in-hand, which is sufficient at this stage to state a claim that Squire treated plaintiff differently from similarly situated prisoners because of his race.

However, plaintiff does not allege any facts indicating racial animus by Berisha, Merced, or Pressley, and thus, his equal protection claim based on racial discrimination against these defendants must be dismissed.

Further, to the extent plaintiff's equal protection claim is premised on alleged discrimination because he is Muslim or incarcerated, such allegations fail.  Plaintiff has not alleged any facts demonstrating any defendants were aware of his religion or discriminated against him because of it.  Further, incarcerated people are not a protected class under the Fourteenth Amendment.  See Gil-Cabrera v. Dep't of Corr., 2021 WL 5282620, at *3 (S.D.N.Y. Sept. 27, 2021) ("[I]nmates are not, by virtue of being inmates, members of a protected class."). Plaintiff also has not pleaded facts indicating Berisha, Merced, or Pressley treated plaintiff differently than similarly situated prisoners under a "class-of-one" theory.  See Levine v. N.Y. State Police, 2022 WL 4465588, at *9 (N.D.N.Y. Sept. 26, 2022) ("When a plaintiff does not allege an equal protection violation due to their membership in a protected class, they may still prevail under a "class-of-one" theory" by "demonstrat[ing] (1) that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment.").

Accordingly, to the extent plaintiff asserts equal protection claims based on his religion or incarcerated status, or any other treatment differing from that of similarly situated inmates, they must be dismissed.

D.     False Misbehavior Reports

C.O.s Berisha, Merced, Squire, and Pressley argue plaintiff's claims regarding two allegedly false misbehavior reports must be dismissed because he does not allege they were issued in retaliation for protected conduct in violation of the First Amendment, nor does he plausibly plead that the issuance of allegedly false misbehavior reports deprived him of a liberty interest in violation of the Fourteenth Amendment.

The Court agrees.

"A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing claim based on false misbehavior report where allegations of conspiracy to retaliate against inmate were "unsupported, speculative, and conclusory"). Instead, to maintain a cognizable claim against correction officers for filing a false misbehavior report, "a plaintiff must be able to show either: (1) that he was disciplined without adequate [procedural] due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." Allen v. City of N.Y., 480 F. Supp. 2d 689, 721 (S.D.N.Y. 2007).

Plaintiff alleges he was issued two misbehavior reports on December 16, 2018, about twelve days after the Incident, which claimed "a slew of false accusations and charges." (Am. Compl. ¶ 21). However, plaintiff's factual allegations do not support a reasonable inference that the reports were issued in retaliation because he does not allege he engaged in any kind of protected conduct before they were issued. Plaintiff also makes conclusory allegations that

18

defendants conspired to issue the false misbehavior reports, but he "does not state a factual basis for this conspiracy claim. And, a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Boddie v. Schneider, 105 F.3d at 862. Further, as discussed above, plaintiff has not pleaded a procedural due process claim based on his disciplinary proceedings.

Accordingly, plaintiff's claims based on the issuance of allegedly false misbehavior reports must be dismissed.

E.     Seizure of Personal Property

C.O.s Berisha, Merced, Pressley, and Squire argue plaintiff's claim for seized personal property does not rise to the level of a constitutional violation because New York offers an adequate post-deprivation remedy.

The Court agrees.

A claim for deprivation of property is not recognized by law in federal court if the state courts provide a remedy for the deprivation. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988). "New York provides such a remedy in § 9 of the New York Court of Claims Act." Berg v. New York, 2021 WL 2435450, at *2 (S.D.N.Y. June 14, 2021); Jenkins v. McMickens, 618 F. Supp. 1472, 1474 (S.D.N.Y. 1985) (state tort action available to compensate detainee for alleged loss of property by prison officials); Cook v. City of N.Y., 607 F. Supp. 702, 704 (S.D.N.Y. 1985) (detainee had meaningful post-deprivation remedy for loss of book through state action for negligence, replevin, or conversion).

Here, plaintiff generally alleges Berisha, Merced, Pressley, and Squire "took the Plaintiff's personal property," without any further details. (Am. Compl. ¶ 43). Such conclusory allegations are insufficient to state a claim. Further, plaintiff has not alleged facts demonstrating

his state remedies are inadequate or inappropriate to address this.  Cf. Butler v. Castro, 896 F.2d 698, 700–04 (2d Cir. 1990).  Because New York provides an adequate post-deprivation remedy, plaintiff cannot state a claim that he was deprived of his property without due process.  Love v. Coughlin, 714 F.2d 207, 208–09 (2d Cir. 1983).

      F.     Denial of Access to Courts

Hearing Officer Gutwein argues plaintiff fails to state a claim for denial of access to courts because plaintiff does not allege he was hindered from pursuing a claim in court.

The Court agrees.

To state a constitutional claim for denial of access to the courts, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  To establish actual injury, the denial of access must have frustrated or impeded the plaintiff's efforts in pursuing a "nonfrivolous legal claim." See Covino v. Reopel, 108 F. 3d 1369, 1369 (2d Cir. 1997) (summary order). "Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right." See Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995). "[T]he Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner.  Prison officials may impose reasonable restrictions on the use of a prison law library." Oliver v. Head Sherriff of Dep't & Div. of Corr. of Nassau Cnty., 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008).

Plaintiff's sole relevant allegation is that Gutwein told officers in the SHU to deny him access to Green Haven's law library.  However, plaintiff does not allege this hindered his ability to pursue any legal claim, nor does he allege he suffered any injury.

Accordingly, plaintiff's denial of access to courts claim must be dismissed.

IV.    Qualified Immunity

Defendants argue they are protected by qualified immunity because plaintiff does not plausibly allege his constitutional rights were violated.

The Court disagrees in part.

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order). However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." Id.

As explained above, plaintiff plausibly alleges C.O. Squire violated his well-established constitutional right to equal protection under the Fourteenth Amendment. Therefore, plaintiff's equal protection claim against Squire cannot be dismissed on qualified immunity grounds.

Further, plaintiff asserts claims that C.O.s Berisha, Merced, Pressley, and Squire used excessive force against him in violation of the Eighth Amendment. Defendants have not moved

to dismiss these claims.  And, based on plaintiff's allegations, the Court cannot conclude at this

stage that these defendants' actions during the Incident did not violate clearly established law or

that it was objectively reasonable for these defendants to believe their actions did not violate

such laws.  (See, e.g., Am. Compl. ¶¶ 8–14).

Accordingly, Berisha, Merced, Pressley, and Squire are not entitled to qualified immunity

on plaintiff's excessive force claim against them at this stage of the case.

V.      Injunctive Relief

Because plaintiff is no longer an inmate at Green Haven, where all defendants are

employed, and is now incarcerated at Sing Sing Correctional Facility, plaintiff is not entitled to

seek injunctive relief against any defendants.  See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir.

1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for

injunctive relief against the transferring facility.").

**CONCLUSION**

The partial motion to dismiss is GRANTED IN PART and DENIED IN PART.

All of plaintiff's claims are dismissed except for his Fourteenth Amendment equal

protection claim against defendant Patrick Squire, in his individual capacity, based on racial

discrimination, and his Eighth Amendment excessive force claim against defendants Djok

Berisha, Michael Merced, Robert Pressley, and Patrick Squire, in their individual capacities.

Further, plaintiff may seek monetary damages with respect to these claims, but may not

pursue injunctive relief.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate defendants Jamie Lamanna and Eric Gutwein from the docket.

The Clerk is further directed to update the docket to reflect that defendants Berisha, Merced, Pressley, and Squire are being sued only in their individual capacities.

The Clerk is also instructed to terminate the motion.  (Doc. #31).

Chambers will mail a copy of this Opinion and Order, and all unpublished decisions cited, to plaintiff at the address on the docket.

Dated: January 31, 2023
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge